UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

HERMAN A. WAHL,

                         Plaintiff,

              V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                       Defendant.
_____

**REPORT AND
RECOMMENDATION**

10-CV-499
(LEK/VEB)

## I. INTRODUCTION

In June of 2007, Plaintiff Herman A. Wahl filed an application for disability and disability insurance benefits under the Social Security Act. Plaintiff alleges that he has been unable to work since December of 2000, due to physical and mental impairments. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, by and through his attorney, Howard D. Olinsky, Esq., commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 13).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

On June 27, 2007, Plaintiff applied for benefits under the Social Security Act, alleging that he had been unable to work since December 31, 2000. (T at 86-88).[1] The Commissioner initially denied the applications and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on September 10, 2009, in Syracuse, New York before ALJ Michael R. McGuire. (T at 13). Plaintiff appeared without an attorney, waived his right to representation, and testified. (T at 20-30). Testimony was also received from Plaintiff's wife and a vocational expert. (T at 30-34).

On September 4, 2009, the ALJ issued a written decision denying Plaintiff's applications for benefits. (T at 8-12). The ALJ's decision became the Commissioner's final decision on March 15, 2010, when the Appeals Council denied Plaintiff's request for review. (T at 1-4).

On April 29, 2010, Plaintiff timely commenced this action, by and through Attorney Olinsky, by filing a Complaint. (Docket No. 1). The Commissioner interposed an Answer on October 6, 2010. (Docket No. 8). Plaintiff filed a supporting Brief on November 22, 2010. (Docket No. 11). The Commissioner filed a Brief in opposition on January 6, 2011. (Docket No. 12).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had

---

[1] Citations to "T" refer to the Administrative Transcript. (Docket No. 9).

2

accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons set forth below, it is recommended that Plaintiff's motion be granted, the Commissioner's motion be denied, and this case be remanded for further administrative proceedings.

### III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford

---

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2000.  The ALJ also found that Plaintiff had not engaged in substantial gainful activity since December 31, 2000, the date of alleged onset of disability. (T at 10).

Plaintiff alleges that he is disabled due to diabetes mellitus, tinnitus, post-traumatic stress disorder, obesity, dizziness, fatigue, and coronary artery disease. (T at 11). The ALJ determined that as of the date last insured (December 31, 2000), there were no medical signs or laboratory findings to substantiate the existence of a medically determinable

---

the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

impairment. (T at 10).   Accordingly, the ALJ concluded that Plaintiff was not under a "disability," as that term is defined under the Act, as of the date last insured, December 31, 2000. (T at 11).

As noted above, the ALJ's decision became the Commissioner's final decision on March 15, 2010, when the Appeals Council denied Plaintiff's request for review. (T at 1-4).

### 2.     Plaintiff's Claims

Plaintiff argues that the Commissioner's decision should be reversed.   He offers three (3) principal arguments in support of his position.   First, Plaintiff contends that the ALJ failed to adequately develop the administrative record.   Second, Plaintiff argues that the ALJ erred because he did not find that several of Plaintiff's impairments were severe.   Third, Plaintiff argues that the ALJ should have ordered a consultative examination.   Each argument will be addressed in turn.

### a.     Development of the Administrative Record

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." Perez v. Chater, 77 F.3d 41, 47 (2d Cir.1996) (citing Echevarria v. Secretary of Health & Human Servs., 685 F.2d 751, 755 (2d Cir.1982)). This duty is heightened if the claimant appears pro se.  See Devora v. Barnhart, 205 F. Supp.2d 164, 172 (S.D.N.Y.2002) (citing Cullinane v. Secretary of Dep't of Health and Human Servs., 728 F.2d 137, 139 (2d Cir.1984)).

There is no dispute in this case that Plaintiff is entitled to benefits only if he became disabled on or before December 31, 2000, the date last insured. (Plaintiff's Memorandum

of Law, Docket No. 11, at p. 10).  However, the administrative record contains very limited medical evidence from the period prior to the date last insured.

For example, in November of 2004, Plaintiff (a Vietnam veteran) was referred to Dr. Daniel Purnine, a psychologist. Dr. Purnine diagnosed chronic post-traumatic stress disorder. ("PTSD"). (T at 241).  Plaintiff received treatment from Dr. Purnine and Dr. Louis Weller, another psychologist, during December of 2004 and throughout 2005. (T at 168, 174, 182, 190, 208, 219, 221, 224, 230-31, 234, 237, 243).  Plaintiff was described as having numerous serious symptoms, including depressive/irritable mood, intrusive memories, nightmares, insomnia, and guilt. (T at 219-20, 222-23, 241).

The ALJ noted the PTSD diagnosis and treatment, but found that there were no medical signs or laboratory finding to substantiate the existence of a medically determinable impairment as of the date last insured. (T at 11).  The sole reason cited by the ALJ for this conclusion was that the "initial diagnosis of [PTSD] was not made until November 2004, which was subsequent to the date last insured." (T at 11).

For the following reasons, this Court finds the ALJ's conclusion inadequately supported and recommends a remand.

The Second Circuit has repeatedly observed:

> Evidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement i.e., insured status was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date.

Lisa v. Sec'y of Dept. of Health & Human Servs., 940 F.2d 40, 44 (2d Cir.1991) (quoting

Gold v. Sec'y of Health, Educ. & Welfare, 463 F.2d 38, 41-42 (2d Cir.1972)).

In the present case, there is ample reason to believe Plaintiff experienced symptoms and limitations related to PTSD prior to the November 2004 diagnosis. Plaintiff was drafted into the Army and served in active duty from September of 1967 to April of 1969. He was deployed to Vietnam and reported experiencing traumatic events while there, which he found it difficult to discuss. (T at 242). Plaintiff was described as having difficulty speaking about his symptoms and experiences, becoming "emotional and embarrassed." (T at 242). In later therapy sessions, Plaintiff shared photographs of mass graves and spoke of fellow soldiers he had known. (T at 206). Plaintiff was described as becoming tearful when discussing his fallen friends and the horror of burying dead Vietnamese in mass graves. (T at 206). He also discussed firefights and tossing a grenade into a cave. (T at 207). Plaintiff received a commendation for heroism from the U.S. Army. (T at 295). The commendation indicated that Plaintiff served bravely while his unit was subject to "intense 105mm howitzer, 82mm mortar, and recoiless rifle fire." (T at 295).

Plaintiff's wife believes Plaintiff's PTSD was related to his Vietnam service. (T at 140, 299-301). She described Plaintiff as "on the right track" before he was drafted and "went to war." (T at 150). After returning, Plaintiff had difficulty focusing. (T at 150). Mark Metzger, an acquaintance of Plaintiff, submitted a letter indicating that he observed numerous outbursts of temper from Plaintiff between 1984 and 1990. (T at 302).

Plaintiff testified that he did not realize he had PTSD before the November 2004 diagnosis, but described mood and behavior problems (including frustration and anger) related to his Vietnam service occurring much earlier than that. (T at 23-25). Plaintiff sought assistance during the 1970s when his symptoms started, but indicated that he

received little assistance. (T at 29).  Plaintiff testified that his condition had only recently improved as a result of therapy. (T at 29).

It is perhaps possible that Plaintiff suppressed the trauma he suffered during his military service and had no limitations arising from his Vietnam experience until after December of 2000.  It is also possible that Plaintiff suffered some limitations prior to that period, but his condition became aggravated and disabling only after the date last insured. However, there is certainly a likelihood that Plaintiff suffered from PTSD and related symptoms since his service and that those symptoms may have become disabling prior to the date last insured.

At a minimum, it was error for the ALJ to deny the claim for benefits solely because Plaintiff's condition had not been diagnosed prior to the date last insured. The ALJ should have developed the record by asking Plaintiff's mental health providers to provide an opinion concerning Plaintiff's limitations prior to December 31, 2000. See Disarno v. Astrue, No. 09-CV-64, 2010 WL 2629808, at *3 (W.D.N.Y. June 28, 2010)("[A] retrospective diagnosis may shed considerable light on the seriousness of a Plaintiff's condition during the relevant period.")(citing Tirado v. Brown, 842 F.2d 595, 597 (2d Cir.1988)); see also Pollard v. Halter, 377 F.3d 183, 194 (2d Cir.2004) (finding that "district court erred insofar as it categorically refused to consider the new evidence simply because it was generated after the relevant time period and did not "explicitly discuss [claimant's] condition during the relevant time period"); Lisa, 940 F.2d at 44 (explaining that subsequent evidence may disclose the "continuity of impairments existing before the earning requirement date"); Reyes v. Barnhart, 226 F. Supp.2d 523, 530 (S.D.N.Y.2002) (finding that "the severity of the conditions in the period shortly after the relevant time period len[t] strong support to

[the] conclusion that the very same conditions were disabling in the relevant time period.");
Ventura v. Barnhart, No. 3:04-CV-1401, 2006 WL 1272668, at *20 (D.Conn.Feb.2, 2006)
("The Second Circuit has held that medical records that post-date the date last insured may
be relevant to bolster the credibility of the plaintiff's subjective complaints.").

      The fact that Plaintiff, who was acting *pro se* at the administrative hearing, could not
produce contemporaneous evidence showing that his PTSD became disabling prior to the
date last insured was not a sufficient basis upon which to deny the application for benefits.
See Martinez v. Barnhart, 262 F. Supp.2d 40, 45 (W.D.N.Y. 2003)("[T]he absence of
contemporaneous medical records does not preclude a claimant from otherwise
demonstrating that he was disabled prior to the expiration of his insured status."); Miller v.
Astrue, No. 03 Civ.2072, 2008 WL 2540750, at *10 (S.D.N.Y. Jun. 23, 2008)("Miller has no
medical records for the time period between 1996 and 2001. There consequently are no
contemporaneous records which can establish that she was disabled as of May 15, 1999.
The absence of these records, however, does not preclude her from otherwise
demonstrating th[at] she was disabled as of that date.").

      Plaintiff also suggests that the ALJ should have sought additional records
concerning Plaintiff's health problems (including vertigo and cardiac issues) from Northeast
Medical Center, Dr. Edwards (a treating physician), CNY Cardiologists, and St. Joseph's
Hospital.   According to Plaintiff, some or all of these entities may have information
concerning treatment and symptoms prior to the date last insured.   A remand will afford the
ALJ and Plaintiff (who is now represented by counsel) an opportunity to explore whether
any of these entities remains in possession of evidence related to whether Plaintiff became
disabled prior to the date last insured.

For the reasons outlined above, this Court finds that the ALJ did not adequately develop the record concerning the onset of Plaintiff's symptoms and a remand is therefore recommended.

### b.   Severity of Impairments

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." Gibbs v. Astrue, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March

19,1999) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

In the present case, Plaintiff alleges that his diabetes mellitus, tinnitus, obesity, dizziness, fatigue, and coronary artery disease constituted severe impairments within the meaning of the Social Security Act.  The ALJ concluded that there were no medical signs or laboratory findings to substantiate the existence of any of these impairments prior to the date last insured. (T at 11).  Here, again, the ALJ did not adequately develop the record. The fact that Plaintiff was only diagnosed with these impairments after the date last insured does not necessarily mean that the limitations arose and/or became disabling thereafter. On remand, the ALJ should seek additional records (as suggested by Plaintiff's counsel) and seek retrospective opinions from Plaintiff's current providers with regard to whether Plaintiff's impairments caused disabling limitations prior to the date last insured.

### c.    Failure to Order Consultative Examination

Plaintiff also contends that the ALJ should have ordered a consultative psychiatric and/or medical examination.  See 20 C.F.R. § 404.1512(f) (explaining that the ALJ will order consultative examinations "If the information [the Commissioner] need[s] is not readily available from the records of [the claimant's] medical treatment source, or [the Commissioner] [is] unable to seek clarification from [a] medical source").  To the extent that further development of the record, as outlined above, does not shed light on the nature and extent of Plaintiff's limitations prior to the date last insured (or in the event the ALJ is unable to obtain an opinion from a treating source), a consultative psychiatric and/or medical examination should be considered.

### 3.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).  Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be DENIED, that Plaintiff's Motion for Judgment on the Pleadings be GRANTED, and that this case be remanded for further administrative proceedings.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

13

Dated:   March 23, 2012

          Syracuse, New York


## V. ORDERS


      Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

      **ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

      **FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

March 23, 2012

Victor E. Bianchini
United States Magistrate Judge